UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-249-GWU

ARCHIE REED, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Archie Reed, was found by an Administrative Law Judge (ALJ) to have “severe” impairments consisting of diet controlled diabetes mellitus, degenerative disc disease of the lumbar spine, osteoarthritis of the shoulders, hearing loss, and hemorrhoids. (Tr. 17). Nevertheless, based on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Reed retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 20-6). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 53-year-old man with a high school education and work experience as a concrete finisher, could perform any jobs if he were limited to “medium” level exertion with the option of sitting or standing at will, with non-exertional impairments of being precluded from overhead reaching, stooping, and exposure to loud noises or

pulmonary irritants. (Tr. 286-7). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 287).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence and that they fairly depict the plaintiff's condition. There is an additional issue in that the plaintiff's Date Last Insured (DLI) for the purposes of his DIB application was December 31, 2006, meaning that he was required to show disability before that date in order to be entitled to benefits.

Mr. Reed alleged disability due to conditions including hearing loss, hemorrhoids, high cholesterol, diabetes, spurs in his back, shoulder pain requiring cortisone shots, and depression. (Tr. 60).

Initially, it should be noted that although Mr. Reed described depression (Tr. 282, 284), he apparently received no treatment and the only medical evidence is from a state agency reviewer who concluded that he had no medically determinable medical impairment. (Tr. 209).

Regarding Mr. Reed's allegations of physical difficulties, essentially all of his treatment was provided by various sources at the Veterans Administration Medical Center (VAMC) in Lexington, Kentucky. In 2002, for example, he complained of knee and shoulder pain and was provided Naprosen after an x-ray showed

moderate knee effusion. (Tr. 189-91). He was put on a restricted diet for elevated glucose. (Id.). Shortly thereafter, he stated that his knee was less painful, and that he felt well; his diabetes was found to be under good control. (Tr. 190). A hearing evaluation showed mild to severe hearing loss and hearing aids were ordered. (Tr. 182). There were also examinations for hemorrhoidal problems, although Mr. Reed declined surgery. (Tr. 163, 173, 179). There were several evaluations for shoulder pain, and it was noted that Mr. Reed had a reduced range of motion and had difficulty extending his right arm and was unable to touch the back of his head or his lower back with his right arm. (Tr. 150-1, 157). An x-ray of the shoulder showed no gross abnormalities in March, 2005, but Resident Physician Dane Glueck diagnosed bilateral shoulder impingement and loss of motion and planned to give injections. (Tr. 127-8, 249-50). A lumbosacral spine x-ray also showed degenerative changes. (Tr. 148). Mr. Reed reported in April, 2006 that the injections a year earlier had worked well and he had only recently started having nocturnal pain and worsening of symptoms. (Tr. 246). Another injection was planned.

Mr. Reed was evaluated by Dr. Walter Shank on March 2, 2006 for his list of conditions, including the shoulder pain, lower back pain, and persistent hemorrhoids, for which he was now willing to consider surgery. Dr. Shank confirmed a decreased range of motion of both shoulders and obtained a repeat lumbar spine x-ray which showed moderate degenerative disc and arthritic change.

(Tr. 237-41). He felt that physical therapy and a cortisone shot in the shoulders could be helpful. At the end of April, 2006, another source at VAMC reported that Mr. Reed stated that the shots had "helped a lot." (Tr. 235-6).

Dr. Shank prepared a functional capacity assessment on May 14, 2006 stating that lifting, carrying, standing, and walking were affected to an unspecified extent because of degenerative changes on x-rays and a decreased range of motion on examination. It was "unknown" how much he could lift and carry. Sitting was not affected. Dr. Shank opined that the plaintiff should never climb, crouch, kneel, or crawl, could occasionally balance, and would have restrictions on reaching, pushing, pulling, and working around heights. (Tr. 224-7).[1]

The only other physician to give an opinion regarding functional capacity was Dr. Raymond Santucci, who performed a consultative examination of Mr. Reed on August 13, 2005. The only abnormality on his examination at the time was a slightly diminished range of motion on the right shoulder. (Tr. 203-4). Dr. Santucci did not perform a rectal examination, however. He stated that Mr. Reed appeared to be capable of performing "a marked amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects." (Tr. 205).

---

[1]Dr. Shank apparently resubmitted the same form on November 16, 2006 because his signature had been illegible. (Tr. 256-9, 290).

The ALJ stated that he accepted Dr. Santucci's opinion because it was consistent with the record, and he did not feel that the plaintiff had postural restrictions to the extent that Dr. Shank opined. (Tr. 22-3). The functional restrictions in the hypothetical question were more limiting than Dr. Santucci had found, however.

The plaintiff asserts on appeal that the ALJ committed error in rejecting the opinion of Dr. Shank as a treating source, and at a minimum, failed to give good reasons for rejecting the opinion of the treating source as required by Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004). However, the evidence does not show that Dr. Shank examined Mr. Reed on more than one occasion. The requirement for giving good reasons for the rejection of an opinion applies only to treating sources. Smith v. Commissioner of Social Security, 482 F.3d 873, 876 (6th Cir. 2007). While Dr. Shank was employed by the facility that treated Mr. Reed over a period of time, it is not clear that he had a longitudinal view of his impairments, which is one of the rationales for the treating physician rule. See, e.g., Walker v. Secretary of Health and Human Services, 980 F.2d 1066, 1070 (6th Cir. 1992).

As one-time examiners, Dr. Santucci and Dr. Shank were equally well placed to provide an opinion. While Dr. Shank may have been in a better position to discuss restrictions based on Mr. Reed's hemorrhoid problems, given the records

available to him, he did not list hemorrhoids as a reason for the restrictions he provided, and the VAMC notes suggest that this problem would be correctable by surgery. Moreover, the VAMC notes seem to indicate that the shoulder problems responded well to cortisone injections.

The administrative decision is supported by substantial evidence, and will be affirmed.

This the 27th day of May, 2009.

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF KENTUCKY

**Signed By:**

***G. Wix Unthank***

**United States Senior Judge**